IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DUANE ERIK FREEMAN, SR.,

    *Plaintiff*,

  v.

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY
ADMINISTRATION,

    *Defendant*.

No. 1:19-cv-01872-SB

---

Duane Erik Freeman, Sr., Newark, Delaware.

*Pro Se Plaintiff.*

Heather Benderson, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

August 13, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Duane Freeman owes the Social Security Administration money. Again and again, he has challenged that debt. Now Freeman raises yet another challenge, this time on due-process grounds. Though he has a colorable claim, he lacks a remedy. He cannot get damages against this federal agency. And the violations he points to did not affect the outcome. So he does not get a new hearing, and I will not reopen his case.

## I. BACKGROUND

The Administration paid Freeman too much in disability benefits. So it told him to give the money back. 20 C.F.R. § 404.506(b); D.I. 13-1, at 8. Unwilling to do that, Freeman requested a waiver, arguing that the overpayment was not his fault and that he could not afford to repay. *See* 42 U.S.C. § 404(b)(1). Repeatedly, the Administration rejected Freeman's waiver request. D.I. 13-1, at 10, 15. On appeal, this Court confirmed that Freeman had to return the money. *Freeman v. Astrue*, 2015 WL 3766085, at *7 (D. Del. June 16, 2015) (Sleet, J.).

Recently, Freeman challenged the merits of his debt again. I dismissed that challenge for lack of jurisdiction but gave him a chance to file colorable constitutional claims. *Freeman v. Saul*, 2021 WL 616991, at *2 (D. Del. Feb. 17, 2021). Freeman missed the deadline, claiming that he never got the opinion. D.I. 18, at 1. Now he moves to reopen his case. Fed. R. Civ. P. 60(b)(1). He offers an amended complaint asserting that the Administration violated his procedural due-process rights.

To decide if Freeman has stated colorable claims, I consider the complaint, its exhibits, and public records, including the administrative record from Freeman's

earlier suit. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Because Freeman represents himself, I read his complaint generously. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Even the most generous reading cannot help Freeman. He says the Administration could not garnish his wages. But the statute and regulations say otherwise. He also contends that the Administration should have processed his waiver request before collecting its debt. Perhaps the Administration should have waited while it considered its first request, but Freeman has no remedy for this. And the Administration did not need to wait while his second request was pending.

## II. THE ADMINISTRATION CAN GARNISH FREEMAN'S WAGES

To get its money back, the Administration began to take part of Freeman's paychecks. Freeman says the Administration had no authority to do so. First, he contends that it misused "administrative wage garnishment." Am. Compl. at 4, D.I. 22. Not so. Administrative wage garnishment involves telling a *non-federal* employer to withhold part of a debtor's paycheck. 20 C.F.R. § 422.402(a); 31 C.F.R. § 285.11(b)(5). Because Freeman is a postal worker, the Administration used federal salary offset for him. 20 C.F.R. § 422.829(a)(1); D.I. 22-1, Ex. 6. Freeman insists that is forbidden too. But the Administration can use salary offset to garnish the wages of *any* federal employee, including postal workers like Freeman. 5 U.S.C. § 5514; 20 C.F.R. § 422.829(a)(2).

### III. THE ADMINISTRATION LIKELY DID HAVE TO PAUSE ITS COLLECTION IN RESPONSE TO HIS FIRST CHALLENGE

Next, Freeman says that the Administration should not have taken his money before responding to his first waiver request. He may have a point. Still, he cannot recover for that alleged violation. So this claim fails too.

#### A. The Administration should not have offset Freeman's tax return while his first waiver request was pending

Before reclaiming disability benefits, the Administration must give notice and a chance to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). So it cannot offset a beneficiary's wages or tax refunds until it issues an "initial waiver determination," or a first decision on the merits. *Califano v. Tamasaki*, 442 U.S. 682, 697 (1979); *Mattern v. Mathews*, 582 F.2d 248, 258 (3d Cir. 1978); 20 C.F.R. §§ 404.506(c), 422.317(a); *see* D.I. 7, at 165, *Freeman*, 2015 WL 3766085 ("If you request … waiver within 30 days, the overpayment will not have to be recovered until the case is reviewed."). Once it does, it can start collecting the debt. But it must first tell the beneficiary that it is doing so. 20 C.F.R. § 404.521.

According to Freeman, the Administration did not follow that process here. When it told Freeman that it had overpaid him, he promptly asked for a waiver. But the Administration took years to respond. And before it did, it took Freeman's entire tax return. D.I. 22-1, at 1. To make matters worse, Freeman says, it did so without giving him a heads-up. Am. Compl. at 4. This could violate due process.

### B. Even if the Administration did violate due process, Freeman does not get a new hearing

But to recover for a constitutional violation, you must have a remedy. Freeman cannot get money damages for the inconvenience of having his tax refund taken early. 42 U.S.C. § 405(g); *Schweiker v. Chilicky*, 487 U.S. 412, 414, 424 (1988). Nor can he get injunctive relief because the claimed procedural errors did not affect the Administration's decision. *Kelley v. Heckler*, 761 F.2d 1538, 1540–41 (11th Cir. 1985) (per curiam). Freeman was heard on the merits four times. Each time, he lost and the Administration told him to repay. Having his tax refund during the first hearing would not have changed that. So I will not order the Administration to give his waiver request a fresh look. *Cf. Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969).

### IV. THE ADMINISTRATION DID NOT NEED TO PAUSE ITS COLLECTION DURING FREEMAN'S LATER CHALLENGES TO HIS DEBT

When Freeman refused to repay his debt after his first waiver request was denied, the Administration told him that it planned to refer his case to the Department of Justice for a potential lawsuit. *See* D.I. 22-1, at 7. That inspired Freeman to file a second request to waive his overpayment. D.I. 1-1, at 2–3. While this request was pending, the Administration continued to take money out of his wages and his tax refunds. Compl. at 5, D.I. 1. Freeman insists that was unconstitutional.

He is wrong. The first time a debtor files a waiver request, the Administration must pause all collections. 20 C.F.R. §§ 404.506(c), 404.525. But it need not do so while later requests are pending. § 404.523(a). Otherwise, a debtor could indefinitely avoid repaying by filing a stream of waiver requests.

5

Despite these regulations, Freeman insists that the government had to wait. He asserts that it "led [him] to believe he was entitled to a" decision before it garnished his wages and tax return. Am. Compl. at 5. Indeed, its letter told him so: "If you request review within 30 days …, we will not begin Federal Salary Offset before we send you our decision." D.I. 22-1, at 13.

No doubt, the Administration should not tell beneficiaries that it will toll their debt and then proceed to collect. But its failure to honor its promise does not violate the Constitution. Due process requires it to keep its word only when someone "reasonably relie[s]" on the statement and "has suffered substantially" as a result. *United States v. Caceres*, 440 U.S. 741, 752–53 & n.15 (1979). Freeman says that the Administration "misled" him. Am. Compl. at 3. But he has not explained how he changed his behavior based on this promise, much less how he was hurt doing so. *Caceres*, 440 U.S. at 753. Even if the Administration had followed its promise, Freeman would still be in the same position today. *Id.* Because the Administration denied his second waiver request, he must repay the benefits.

\* \* \* \* \*

Freeman may be right that the Administration took his tax refund too soon. But he is not entitled to have it back now. He has been heard on the merits (and lost); he must give the extra benefits back. I will thus reject Freeman's request to reopen his case.